**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------- x
**NEERAJ MEHTA,**

                  **Plaintiff,**

  **-against-**

**CITY OF NEW YORK, NEW YORK CITY**
**DEPARTMENT OF CORRECTIONS,**
**REKHA NAGPURKAR, in her individual**
**and official capacity, and MAUREEN**
**DANKO, in her individual and official**
**capacity, and CYNTHIA BRANN, in her**
**official capacity,**

                  **Defendants.**
---------------------------------------------------------- x

**OPINION & ORDER**

**1:19-cv-03857-NG-VMS**

**GERSHON, United States District Judge:**

## I.    Introduction

Plaintiff Neeraj Mehta, a former computer systems manager in the Information Technology Department of the New York City Department of Corrections ("NYCDOC"), commenced this action under Title VII of the of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Family Medical Leave Act ("FMLA"), 29 §§ U.S.C. 2601 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*, against the City of New York, the New York City Department of Corrections, Rekha Nagpurkar, in her individual and official capacity, Maureen Danko, in her individual and official capacity, and Cynthia Brann, in her official capacity (collectively, the "defendants"). Plaintiff brings the federal claims against all defendants, except the individual defendants, and the state and city claims against all defendants. Plaintiff claims that he was discriminated against based on his gender or perceived sexual orientation, religion or

national origin, and disability, and that he was retaliated against for complaining about this treatment.  He also claims that he was subject to a hostile work environment because of these same protected characteristics.  He further claims that defendants failed to provide him with reasonable accommodations for his disability.  Finally, plaintiff claims that defendants interfered with his FMLA rights and retaliated against him for exercising them.

At a pre-motion conference in anticipation of defendants bringing a motion to dismiss, the parties agreed that plaintiff would amend his complaint in response to the issues raised at the conference.  After plaintiff filed a First Amended Complaint (the "Complaint"), defendants moved to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

For the reasons set forth below, defendants' motion is granted, in part, and denied, in part.

## II.    Facts as Alleged in the Complaint

The facts as alleged in the Complaint are taken as true for the purposes of this motion.[1] Plaintiff Neeraj Mehta was hired as a computer systems manager around December 21, 2015 in the Information Technology Department of NYCDOC.  Complaint ¶ 14.  Plaintiff was employed at the Bulova Corporate Center in East Elmhurst, New York.  *Id*. ¶ 15.  Defendant Rekha Nagpurkar was the Executive Director of IT and defendant Maureen Danko was the Deputy Commissioner of IT for NYCDOC.  *Id*. ¶¶ 10-11.  Defendant Cynthia Brann was the Commissioner of NYCDOC.  *Id*. ¶ 12.

---

[1] In some instances, plaintiff's Memorandum of Law in Opposition ("Opp.") relies on facts that are not alleged in, nor reasonably inferred from, the Complaint.  For example, plaintiff argues that defendants required plaintiff to continue working, Opp. 10, while the Complaint alleges it was plaintiff who sought to continue working.  Complaint ¶¶ 32, 35.  I have considered only the facts as alleged in, or reasonably inferred from, the Complaint.

Around November 2017, Nagpurkar commented that plaintiff wears an earring in one ear and asked plaintiff if he was "gay" because she believed that when men wear an earring in one ear that means they are homosexual.  *Id*. ¶ 19.  Plaintiff protested the comments and informed Nagpurkar that he is not homosexual, but Nagpurkar "continued to discuss" plaintiff's perceived homosexuality.  *Id*. ¶ 20.  This occurred on at least three additional occasions.  *Id*. ¶ 21.

Around January 20, 2018, plaintiff began to experience back pain and went to the NYCDOC's EEO office to request lumbar support for his chair.  *Id*. ¶ 22.  He alleges that "NYCDOC refused to provide the requested lumbar support until Plaintiff supplied MRI and X-Ray images of his back.  As such, NYCDOC failed to provide Plaintiff with the requested lumbar support."  *Id*. ¶ 23.  Shortly thereafter, plaintiff was experiencing "extreme pain in his back" and asked Nagpurkar "for permission to leave work early to see his doctor."  *Id*. ¶ 24.  Nagpurkar granted plaintiff's request but said, "Don't let this happen again."  *Id*. ¶ 26.  As a result of this comment, plaintiff was afraid to request additional leave in the future and avoided doing so despite needing to, for fear of reprisal.  *Id*.  When plaintiff returned to work the next day, he learned that Nagpurkar had "disclosed Plaintiff's confidential medical condition" to other IT staff.  *Id*. ¶ 27.

Although plaintiff was instructed by his doctor to stand up and walk around every hour to alleviate pain in his back, throughout 2018, Nagpurkar "constantly criticized" plaintiff for standing up and walking to alleviate his back pain.  *Id*. ¶ 29.  Plaintiff complained and said that he was acting under doctor's orders, but Nagpurkar continued to criticize him.  *Id*.  Around March 1, 2018, plaintiff filed a complaint with the Department of Investigations ("DOI") regarding Nagpurkar's conduct.  *Id*. ¶ 30.

Around May 6, 2018, plaintiff suffered a slipped disc in his back, which required that he be admitted to the hospital for two days.  *Id*. ¶ 31.  On that same day, plaintiff emailed Nagpurkar

and Danko to report that he was in the hospital as a result of a slipped disc and would be unable to physically report to work. *Id.* ¶ 32. He alleges that he "requested FMLA leave and that Defendant allow him to work from home, meaning from the hospital, to accommodate his disability." *Id.* ¶ 32. Nagpurkar granted plaintiff's request to work from the hospital but told plaintiff that he was not allowed to communicate with any of his colleagues in the IT department. *Id.* ¶ 33. Two days later, plaintiff was released, but still could not stand or walk without "excruciating pain because of the slipped disc." *Id.* ¶ 35. Plaintiff contacted NYCDOC's EEO office and requested permission to work from home until his back healed. *Id.* He alleges that the request also "constituted a request for leave under the FMLA." *Id.* The EEO officer told plaintiff that NYCDOC would likely approve a four-week work from home accommodation. *Id.* ¶ 36.

Plaintiff waited one week to hear back about his accommodation request and, during this week, was not paid his salary. *Id.* ¶ 37. After the week elapsed, Nagpurkar denied plaintiff's accommodation request and granted him only two weeks of work from home. *Id.* ¶ 38. Plaintiff's colleague, Venu Puli, who held the same position as plaintiff, and was not disabled, did not wear an earring in one ear, and was not Hindu, was permitted to work from home whenever he pleased. *Id.* ¶ 39. While working from home, Nagpurkar instructed plaintiff not to contact his colleagues, only her. *Id.* ¶ 40.

Around May 29, 2018, plaintiff physically returned to work. *Id.* ¶ 41. Plaintiff was not fully recovered and his early return to work caused him to suffer a left lateral ligament strain. *Id.* After his physical return to the office, Nagpurkar "routinely" humiliated plaintiff around his colleagues, making demeaning comments, such as "Are we going to need to get you a wheelchair?" and "You are like an old man." *Id.* ¶ 42. Nagpurkar also told plaintiff that he was "to blame for his disability because he failed to pray and do Yoga, as expected of good Hindus." *Id.* ¶ 43.

Around the same time, Nagpurkar began to "sabotage" plaintiff's work. *Id.* ¶ 44. Nagpurkar, for example, excluded plaintiff from emails and, again, instructed him that he should not email his colleagues. *Id.* Nagpurkar also micromanaged plaintiff's work. *Id.* ¶ 45.

Around June 18, 2018, approximately three weeks after plaintiff's physical return to the office, Nagpurkar told plaintiff that he was fired. *Id.* ¶¶ 46, 50. Danko, who served as the Deputy Commissioner of IT for NYCDOC, encouraged Nagpurkar, who, as noted, served as the Executive Director of IT, to fire plaintiff. *Id.* ¶ 50. Two days after his termination, plaintiff received a letter stating that he had passed the 8415-computer systems manager exam, which he had taken in April 2018 and meant he would have become a Permanent City Title had he not been terminated. *Id.* ¶ 47.

## III.    Standard of Review

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering such a motion, the court must accept as true all well-pleaded factual allegations and must draw all reasonable inferences in plaintiff's favor. *Swiatkowski v. Citibank*, 446 F. App'x 360, 360-61 (2d Cir. 2011). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and citation omitted). Facial plausibility exists when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The well-pleaded factual allegations must "nudge[] [plaintiff's] claims" "across the line from conceivable to plausible." *Id.* at 680 (internal citation omitted).

**IV.   Discussion**

    **A.  Discrimination Claims**

        **1.   Title VII and NYSHRL Discrimination Claims**

At the pleading stage of a Title VII discrimination case, a plaintiff "is not required to plead a *prima facie* case under [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)]…to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Instead, "a plaintiff must allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id*. at 87. A plaintiff sufficiently pleads this second requirement when he alleges facts lending "plausible support to a minimal inference of discriminatory motivation." *Id*. at 84 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). NYSHRL gender or perceived sexual orientation and religion or national origin discrimination claims are analyzed under the same standard. *See Reyes v. Westchester Cnty. Health Care Corp.*, 2021 WL 4944285, at *2 (2d Cir. Oct. 25, 2021); *Szewczyk v. City of New York*, 2016 WL 3920216, at *4 (E.D.N.Y. July 14, 2016).

Defendants do not contest that plaintiff's termination is an adverse employment action;[2] instead, they argue that he has not pleaded facts supporting a minimal inference of discrimination.

        **i.   Gender or perceived sexual orientation discrimination**

An inference of discrimination is a "flexible [standard] that can be satisfied differently in differing factual scenarios," *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996),

---

[2] Because the parties agree that plaintiff's termination is an adverse employment action and do not address whether plaintiff alleges any other adverse employment actions, and because it would not make a material difference to determining whether these claims survive defendants' motion, I do not need to reach whether plaintiff plausibly alleges any other adverse employment actions.

including by "creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Vega*, 801 F.3d at 87 (internal citation omitted); *see also Littlejohn*, 795 F.3d at 312 (describing different ways to establish an inference of discrimination).   Plaintiff relies on Nagpurkar's discriminatory remarks directed to his gender or perceived sexual orientation and allegations that a colleague outside of his protected group, who also held plaintiff's position, was afforded preferential treatment.

Verbal comments can support a minimal inference of discrimination.   In determining whether comments support such an inference, courts in the Second Circuit generally consider four factors: "(1) who made the remark (i.e. a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark...; and (4) the context in which the remark was made (i.e. whether it was related to the decision-making process)." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (internal citations omitted); *Bonilla v. City of New York*, 2019 WL 6050757, at *13-14 (S.D.N.Y. Nov. 15, 2019) (considering factors on a motion to dismiss).   None of the factors is dispositive. *See Henry*, 616 F.3d at 150.   Indeed, "there is no bright-line rule for when remarks become 'too attenuated' to be significant to a determination of discriminatory intent." *Tolbert v. Smith*, 790 F.3d 427, 437 (2d Cir. 2015).

Here, plaintiff alleges four instances in which Nagpurkar asked plaintiff if he was "gay" for wearing an earring in one ear and, on each occasion, when plaintiff responded that he was not homosexual, Nagpurkar "continued to discuss" the topic.   Complaint ¶¶ 19-21.   While the Complaint does not allege the context in which the remarks were made or that these remarks were made close in time to plaintiff's termination, the comments reflect Nagpurkar's discriminatory animus towards plaintiff's gender or perceived sexual orientation.   As the Executive Director of

IT, Nagpurkar was plaintiff's supervisor and the ultimate decision-maker in his termination.  *Id*. ¶ 50; *see Diaz v. Loc. 338 of Retail, Wholesale, Dep't Store Union, United Food & Com. Workers*, 2014 WL 4364819, at *5 (E.D.N.Y. Aug. 20, 2014), *report and recommendation adopted*, 2014 WL 5502316 (E.D.N.Y. Oct. 28, 2014); *Nidzon v. Konica Minolta Bus. Sols., USA, Inc.*, 752 F. Supp. 2d 336, 348 (S.D.N.Y. 2010).

A plaintiff may also "demonstrate circumstances giving rise to an inference of discrimination by alleging that he was treated less favorably than similarly situated employees" outside of plaintiff's protected group.  *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229 (2d Cir. 2014) (internal citation omitted).  While the alleged preferential treatment afforded to plaintiff's colleagues outside of his protected group may not "independently constitute adverse employment actions," it can "provide 'relevant background evidence' by shedding light on Defendant's motivation."  *See Vega*, 801 F.3d at 88 (internal citation omitted).  Here, plaintiff alleges that his colleague Venu Puli, who held the same position as plaintiff, "was allowed to work from home whenever he pleased."  Complaint ¶ 39.  Yet, even after plaintiff was hospitalized for a slipped disc in his back and requested to work from home while recovering, defendants permitted him to work from home for only two weeks.  *Id*. ¶ 38.  Plaintiff alleges that his colleague was not perceived to be homosexual, was not Hindu, and was not disabled.  *Id*. ¶ 39.[3]  These alleged acts of preferential treatment afforded to plaintiff's co-worker lend further support to a minimal inference of discrimination based on plaintiff's gender or perceived sexual orientation.  *See Torre*

---

[3] While plaintiff expressly alleges that Venu Puli was not disabled and did not wear an earring in one ear, and, therefore, was not perceived to be homosexual, he does not explicitly allege that his co-worker was not Hindu.  Complaint ¶ 39.  Plaintiff, however, alleges that the preferential treatment afforded to Venu Puli demonstrated that defendants treated "non Hindu employees" differently.  *Id*.  I have, accordingly, drawn an inference that his co-worker was also not Hindu.

*v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 286 (S.D.N.Y. 2020); *Johnson v. Conn. Dep't of Admin. Servs. Bureau of Enter. Sys. & Tech.*, 2018 WL 306697, at *6 (D. Conn. Jan. 5, 2018).

Defendants argue that the court should not consider this preferential treatment because plaintiff fails to allege that he "was similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]." *Brown*, 756 F.3d at 230. But ordinarily "[w]hether two employees are similarly situated…presents a question of fact, rather than a legal question to be resolved on a motion to dismiss." *Id.* (alterations in original) (internal quotation marks and citation omitted). A plaintiff's burden on a motion to dismiss in this respect is not high. *See Kunik v. N.Y.C. Dep't of Educ.*, 2017 WL 4358764, at *9 (S.D.N.Y. Sept. 29, 2017); *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 495-96 (E.D.N.Y. 2016). By identifying a colleague by name, who held the same position he held, plaintiff pleads enough here.

In sum, viewing plaintiff's allegations together, he plausibly raises a minimal inference of discrimination based on his gender or perceived sexual orientation.

### ii.    Religion or national origin discrimination

For similar reasons, considering plaintiff's allegations together, plaintiff plausibly raises a minimal inference of discrimination based on his religion or national origin.

Upon plaintiff's physical return to the office after suffering a slipped disc in his back, Nagpurkar said to plaintiff "that he was to blame for his disability because he failed to pray and failed to do Yoga, as expected of good Hindus." Complaint ¶ 43. Considering, again, the *Henry* factors, this remark reflects Nagpurkar's discriminatory animus towards plaintiff's exercise of his religion. Nagpurkar, as noted above, was plaintiff's supervisor and the ultimate decision-maker with respect to his termination. Moreover, the remark was made in close temporal proximity— less than three weeks—before plaintiff's termination. *See Sanderson v. Leg Apparel LLC*, 2020

9

WL 3100256, at *10 (S.D.N.Y. June 11, 2020).  As described above, plaintiff also alleges that Venu Puli, who was not Hindu, was afforded preferential treatment as compared to plaintiff. Complaint ¶ 39.

### 2.  ADA and NYSHRL Discrimination Claims

To plead an ADA discrimination claim, a plaintiff must "plausibly allege that '(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.'"  *Patel v. NYU Langone Hosps.*, 2021 WL 4852426, at *2 (2d Cir. Oct. 19, 2021) (quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020)).  "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims." *Limauro v. Consol. Edison Co. of N.Y., Inc.*, 2021 WL 466952, at *3 (S.D.N.Y. Feb. 9, 2021) (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004)).

As with plaintiff's discrimination claims discussed above, defendants contest only the last element.  Defs.' Brief 16.  "[T]he ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action."  *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).  The Supreme Court has clarified recently that the but-for causation standard for discrimination claims applies not only at trial, but also at the pleading stage.  *See Comcast Corp.* v. *Nat'l Ass'n of Afr. Am.-Owned Media*, _ U.S. _, 140 S. Ct. 1009, 1014 (2020); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 & n.4 (2d Cir. 2021).[4]  The Court explained that "the essential elements of a claim remain

---

[4] While *Comcast* concerned a race discrimination claim under 42 U.S.C. § 1981, the Second Circuit recently applied the Supreme Court's decision to an ADEA age discrimination claim, which also requires a plaintiff to plead but-for causation, explaining that "the Court's holding was not limited

constant through the life of a lawsuit…[s]o, to determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end." *Comcast*, 140 S. Ct. at 1014.   Nevertheless, while "the legal elements themselves do not change…[w]hat a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial." *Id*.   Accordingly, to defeat a motion to dismiss, a plaintiff bringing an ADA discrimination claim must plausibly allege that he would not have suffered an adverse employment action but-for his disability.

Verbal comments can support a plausible inference that an adverse employment action would not have occurred but-for plaintiff's disability.  *See DeSio v. Singh*, 2021 WL 4449314, at *12 (S.D.N.Y. Sept. 28, 2021).  In the ADA discrimination context, courts generally consider the same four *Henry* factors discussed previously.  *See id*.; *Pagan v. Morrisania Neighborhood Fam. Health Ctr.*, 2014 WL 464787, at *5 (S.D.N.Y. Jan. 22, 2014).  Here, plaintiff alleges that, upon his physical return to work after his hospitalization for the slipped disc in his back, Nagpurkar routinely humiliated him around his colleagues with demeaning comments directed toward his disability, such as "Are we going to need to get you a wheelchair?" and "You are like an old man." Complaint ¶ 42.  A plausible inference from these remarks, particularly considering plaintiff's recent physical return to the office after his hospitalization, is that Nagpurkar harbored discriminatory animus towards plaintiff's disability.  Nagpurkar was plaintiff's supervisor and the ultimate decision-maker with respect to his termination.  Moreover, the comments occurred in close temporal proximity—within three weeks—to plaintiff's termination.  *See DeSio*, 2021 WL 4449314, at *12; *Pagan*, 2014 WL 464787, at *5.

---

to this context; the decision broadly discusses the 'default or background rule[s]' of causation 'when it comes to federal antidiscrimination laws.'" *Lively*, 6 F.4th at 303 & n.4 (alteration in original) (internal quotation marks and citation omitted).

11

As noted above, plaintiff also alleges that plaintiff's colleague Venu Puli, who was afforded preferential treatment, was not disabled.  Complaint ¶ 39.  This allegation also supports a plausible inference that, but-for his disability, plaintiff would not have been terminated.

Last, in the context of disability discrimination claims, a plaintiff can also support such an inference based on the temporal proximity between plaintiff's termination and his informing his employer of an injury.  *See Stryker v. HSBC Sec. (USA)*, 2020 WL 5127461, at *9 (S.D.N.Y. Aug. 31, 2020); *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015).  Here, plaintiff alleges that just over a month after he informed defendants that he was hospitalized—and three weeks after his physical return to the office from this injury—he was terminated.

Viewing each of plaintiff's allegations together—the discriminatory comments, the preferential treatment of plaintiff's non-disabled colleague, and the temporal proximity between plaintiff's hospitalization for the slipped disc in his back and his termination—plaintiff plausibly alleges that his disability was a but-for cause of his termination.

### 3.  NYCHRL Discrimination Claims

Traditionally, courts "construed the NYCHRL to be coextensive with its federal and state counterparts."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013) (internal citations omitted).  "In 2005, however, the New York City Council amended the NYCHRL by passing the Local Civil Rights Restoration Act of 2005 (the "Restoration Act")."  *Id.* at 109 (internal citations omitted).  The Restoration Act established two new rules of construction. "First, it created a 'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a *floor* below which the City's Human Rights law cannot fall.'"  *Id.* (emphasis in original) (internal citation omitted) (quoting Restoration Act § 1).  "Second, it

amended the NYCHRL to require that its provisions 'be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'" *Id*. (quoting Restoration Act § 7). Claims under the NYCHRL are now analyzed "separately and independently from any federal and state law claims." *Id*. (internal citations omitted). To plead a discrimination claim under the NYCHRL, a plaintiff must allege only that he was "treated 'less well'—because of a discriminatory intent." *Id*. (quoting *Williams v. N.Y.C. Housing Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009)).

Here, plaintiff plausibly alleges discrimination claims under the NYCHRL. Federal and state civil rights statutes serve as a floor for NYCHRL claims. Because I have already determined that plaintiff plausibly alleges discrimination claims under Title VII, the ADA, and the NYSHRL, he necessarily states such claims under the NYCHRL. *See Limauro*, 2021 WL 466952, at *4.

## B. Retaliation Claims

### 1. Federal and NYSHRL Retaliation Claims

For a retaliation claim to survive a motion to dismiss under Title VII, the ADA, or the NYSHRL, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *See Vega*, 801 F.3d at 90 (internal citation omitted) (Title VII); *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 149 (E.D.N.Y. 2018) (citing *Vega*, 801 F.3d at 90) (ADA); *Murray v. Dutchess Cnty. Exec. Branch*, 2019 WL 4688602, at *12 (S.D.N.Y. Sept. 25, 2019) (citing *Vega*, 801 F.3d at 90) (NYSHRL).

An adverse employment action, in the context of a retaliation claim, is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). "Courts in the Second Circuit

have taken a 'generous' view of retaliatory acts at the motion to dismiss stage." *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 723 (E.D.N.Y. 2015) (citing *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir.2013)).

As for causation, unlike Title VII discrimination claims, a plaintiff bringing a retaliation claim under Title VII, the ADA, or the NYSHRL "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90 (Title VII) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)); *D'Alessio v. Charter Commc'ns, LLC*, 2020 WL 5638721, at *6 (E.D.N.Y. Sept. 21, 2020) (ADA);[5] *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 332-33 (S.D.N.Y. 2020) (NYSHRL).[6] "However, 'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). Further, "the but-for causation standard does not alter the plaintiff's ability to demonstrate causation…indirectly through temporal proximity." *Id*. at 845. The retaliatory purpose necessary to allege but-for causation "can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Vega*, 801 F.3d at 90 (Title VII); *accord Lively*, 6 F.4th at 307 (ADEA); *see Bernheim v. N.Y.C. Dep't of Educ.*, 2021 WL 2619706, at *12-13 (S.D.N.Y. June 25, 2021) (ADA), *report and*

---

[5] The Second Circuit has noted that it has not yet expressly resolved "whether a plaintiff must show, in order to succeed on her ADA retaliation claim, that the retaliation was a 'but for' cause of the adverse employment action or merely a 'motivating factor.'" *Norman v. NYU Langone Health Sys.*, 2021 WL 5986999, at *5 n.2 (2d Cir. Dec. 17, 2021) (internal quotation marks and citation omitted). But the reasoning of *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013), and *Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019), holding that the but-for causation standard applies to Title VII retaliation and ADA discrimination claims, respectively, applies with equal force to the causation standard for ADA retaliation claims.

[6] While the Second Circuit has also not yet expressly resolved whether the but-for causation standard applies to NYSHRL retaliation claims, the Second Circuit and district courts in this Circuit have applied it to such claims. *See Farmer*, 473 F. Supp. 3d at 333 n.7 (collecting cases).

*recommendation adopted*, 2021 WL 4198126 (S.D.N.Y. Sept. 15, 2021); *Murray*, 2019 WL 4688602, at *13 (NYSHRL).

> **i.   Did defendants take adverse employment action against plaintiff?**

Plaintiff alleges that he suffered numerous adverse employment actions.  Specifically, *inter alia*, he alleges that: defendants denied his request for lumbar support around January 20, 2018; Nagpurkar "constantly" criticized plaintiff for standing up from his desk to alleviate his back pain, as ordered by his doctor, "throughout 2018;" defendants failed to pay his salary for one week beginning around May 8, 2018; and he was terminated around June 18, 2018.  Complaint ¶¶ 23, 29, 37, 46.

Plaintiff plausibly alleges, at least with respect to the above-referenced acts, adverse employment actions.  Plaintiff concedes that he cannot rely on the denial of his request for lumbar support as a retaliatory act for the request for lumbar support itself.  *See* Opp. 22 n.3.[7]  He argues, instead, that the denial of his request for lumbar support plausibly alleges a retaliatory act for his complaints about Nagpurkar calling him "gay" for wearing an earring in one ear.  *Id.*  I agree with plaintiff that the denial of his request for lumbar support plausibly alleges an adverse employment action for his complaints to Nagpurkar protesting these comments.  As explained in *St. Amour v. Lawrence & Mem'l Corp.*, "[I]t should go without saying that an employer's violation of one antidiscrimination law might dissuade a reasonable worker from making a charge of another kind of discrimination."  2016 WL 4744120, at *8 (D. Conn. Sept. 12, 2016).

Nagpurkar's "constant" criticism of plaintiff for standing up from his desk to alleviate his back pain, as plaintiff's doctor ordered, also plausibly alleges an adverse employment action.  In the disability context, a plaintiff may plead an adverse employment action where defendants have

---

[7]*See, e.g.*, *Morris v. Town of Islip*, 2014 WL 4700227, at *18 (E.D.N.Y. Sept. 22, 2014).

caused plaintiff to take actions, which are detrimental to the plaintiff's disability of which the employer was aware.  *See Collymore v. City of New York*, 767 F. App'x 42, 46 (2d Cir. 2019) (forcing plaintiff "to work through her lunch hour despite knowing that [plaintiff] needed to maintain a specific lunch hour to prevent migraines" plausibly alleged an adverse employment action because defendants forced plaintiff "to choose between reporting discrimination and maintaining her health"); *Grana v. Potter*, 2009 WL 425913, at *11 (E.D.N.Y. Feb. 19, 2009) (finding that requiring plaintiff to work as a window clerk for hours that exceeded her physician's orders could constitute an adverse employment action).  Given the "generous view" of retaliatory acts at the motion to dismiss stage, and drawing all reasonable inferences in plaintiff's favor, targeting actions that plaintiff was taking, as his doctor ordered, to alleviate his back pain for "constant" criticism plausibly "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 57.

Defendants' failure to pay plaintiff his salary for one week and termination, likewise, plausibly allege adverse employment actions.  *See Rivera v. JP Morgan Chase*, 815 F. App'x 603, 607 (2d Cir. 2020); *Vega*, 801 F.3d at 91.

### ii. Was it 'because' he opposed an unlawful employment practice?

Defendants do not contest that plaintiff engaged in certain protected activity: complaints to Nagpurkar about Nagpurkar's discriminatory comments directed to plaintiff's gender or perceived sexual orientation around November 2017; the accommodation request for lumbar support around January 20, 2018; the  accommodation requests to work from the hospital and from home around May 6, 2018 and May 8, 2018, respectively; and complaints to Nagpurkar about Nagpurkar's discriminatory comments directed to his religion or national origin around late May 2018.  Complaint ¶¶ 19-22, 32, 35, 43.

16

Regarding whether plaintiff alleges that defendants' adverse employment actions were taken 'because' plaintiff engaged in protected activity, courts within the Second Circuit generally find that "a two-to three-month gap…is sufficiently narrow, at the motion-to-dismiss stage, to satisfy the requisite causal connection." *Murray*, 2019 WL 4688602, at *13 (internal citations omitted) (collecting cases); *see Vega*, 801 F.3d at 92; *Mondschein v. NY 101, Inc.*, 2020 WL 1275471, at *4. Having carefully reviewed the Complaint, I find that at least one adverse employment action occurred within close temporal proximity to plaintiff engaging in the above-noted acts of protected activity. Accordingly, plaintiff plausibly alleges that, but-for the protected activity, the adverse employment actions would not have occurred.

I reach a different conclusion with respect to plaintiff's complaint to the DOI, which plaintiff also alleges constituted protected activity. Complaint ¶ 30. Plaintiff alleges that he "filed a formal complaint regarding Defendant Nagpurkar's conduct with the Department of Investigations." *Id*. Defendants argue that neither NYCDOC, nor an agent of NYCDOC, could have taken an adverse employment action against plaintiff 'because' he filed the complaint with the DOI if plaintiff nowhere alleges that NYCDOC, or an agent of NYCDOC, had knowledge that plaintiff filed a complaint with the DOI. Defs.' Brief 18.[8] I agree. *See, e.g.*, *Wilson v. New York*, 2017 WL 9674497, at *15 (E.D.N.Y. Jan. 24, 2017), *report and recommendation adopted*, 2018 WL 1466770 (E.D.N.Y. Mar. 26, 2018).

Plaintiff concedes that he has not alleged that NYCDOC, or any agent of NYCDOC, had knowledge that plaintiff filed, or even intended to file, the DOI complaint. He, instead, argues in

---

[8] Defendants also argue that the DOI complaint cannot form the basis of plaintiff's retaliation claims because plaintiff does not specify what "conduct" plaintiff described in his complaint to the DOI. Defs.' Brief 18. I disagree. I can reasonably infer from the Complaint that plaintiff complained about the discriminatory conduct that plaintiff describes in his preceding allegations.

opposition that the court should infer this knowledge merely from the fact that the DOI is, like NYCDOC, an agency of the New York City government.  Opp. 19.  I am aware that in *Gordon v. N.Y.C. Bd. Of Educ.* a plaintiff who had previously sued the New York City Board of Education (the "Board") could rely on "general corporate knowledge that the plaintiff has engaged in a protected activity" to establish the knowledge element of a Title VII retaliation claim based on the retaliatory acts of the Board's agents.  232 F.3d 111, 116 (2d Cir. 2000).  But accepting plaintiff's argument would take the principle of *Gordon* too far.  Without any other factual allegations that would allow me to draw a plausible inference that plaintiff's DOI complaint was communicated in some manner to the NYCDOC, merely because plaintiff filed a complaint with the DOI does not allow me to plausibly infer that NYCDOC had knowledge of the complaint.  *See Uddin v. City of New York*, 427 F. Supp. 2d 414, 427-28 (S.D.N.Y. 2006); *cf. Tucker v. City of New York*, 2011 WL 2893077, at *7 & *7 n.6 (S.D.N.Y. July 15, 2011).

Accordingly, defendants' motion to dismiss plaintiff's retaliation claims is granted, only to the extent that they are based on plaintiff's complaint to the DOI, but it is otherwise denied.

### 2.  NYCHRL Retaliation Claims

To prevail on a retaliation claim under the NYCHRL, the plaintiff must show that he took an action opposing his employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.  *Mihalik*, 715 F.3d at 112.  While the but-for causation standard does not apply to NYCHRL retaliation claims, a plaintiff must still allege a causal connection between the defendant's retaliation and plaintiff's actions opposing discrimination.  *See Wilson*, 2017 WL 9674497, at *18.  Retaliation claims are also, likewise, subject to the Restoration Act's "one-way ratchet," whereby "interpretations of state and federal civil rights statutes can serve only 'as a *floor* below which the City's Human Rights

law cannot fall.'"  *Mihalik*, 715 F.3d at 109 (emphasis in original) (internal citation omitted) (quoting Restoration Act § 1).

For the reasons discussed above with respect to plaintiff's federal and state retaliation claims, plaintiff fails to allege a causal connection between the DOI complaint and any retaliatory conduct.  Plaintiff has not alleged that NYCDOC, or an agent of NYCDOC, was aware of the DOI complaint.  *See, e.g.*, *Wilson*, 2017 WL 9674497, at *18.  Because, however, for the reasons stated above, plaintiff otherwise plausibly alleges retaliation claims under federal and state law, he necessarily states NYCHRL retaliation claims premised on the same conduct.  *See Farmer*, 473 F. Supp. 3d at 334.

### C.  Hostile Work Environment Claims

#### 1.  Federal and NYSHRL Hostile Work Environment Claims

To state a hostile work environment claim under Title VII, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Courts must consider the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Id.* at 321 (quoting *Harris*, 510 U.S. at 23).  "[N]o single factor is required."  *Harris*, 510 U.S. at 23.  "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  *Littlejohn*, 795 F.3d at 321 (internal citation omitted).

A plaintiff must also allege "that the complained of conduct…creates such an environment because of the plaintiff's protected characteristic." *LeGrand v. Walmart Stores E., LP*, 779 F. App'x 779, 782 (2d Cir. 2019) (internal citations omitted).  But, in addition to explicitly discriminatory acts of harassment, facially neutral acts must also be considered when there is some "evidentiary basis" from which the factfinder can infer that the neutral incident was animated by hostility toward a plaintiff's protected characteristic.  *See Daniel v. T & M Prot. Res., LLC*, 689 F. App'x 1, 3 (2d Cir. 2017); *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547-48 (2d Cir. 2010).  Such an "evidentiary basis" is present when "the same individual engaged in multiple acts of harassment, some overtly [based on a protected characteristic] and some not."  *Daniel*, 689 F. App'x at 3 (alteration in original) (citation omitted); *see Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 388 (2d Cir. 2020).  Hostile work environment claims brought under the ADA and NYSHRL[9] are analyzed under these same standards.  *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74, 76 (2d Cir. 2019); *LeGrand*, 779 F. App'x at 782.

In cases like this one, where a plaintiff brings hostile work environment claims based on multiple protected characteristics, a question arises whether conduct based on each protected characteristic should be analyzed independently or aggregated together in considering whether defendants' conduct created a hostile work environment.  The Second Circuit recently instructed a district court to consider the plaintiff's harassment on "multiple fronts—because of his race, sex, and national origin" "in the aggregate."  *Daniel*, 689 F. App'x at 4.  Here, neither the plaintiff nor the defendants addressed the legal issue underlying this question, but the parties did discuss all of

---

[9] In an amendment that was signed into law on August 12, 2019, the New York State legislature removed the "severe and pervasive" requirement for NYSHRL hostile work environment claims. That amendment, however, does not apply retroactively.  *See Chauhan v. MM Hotel Mgmt. LLC*, 2019 WL 6118006, at *6 n.7 (E.D.N.Y. Nov. 18, 2019).  The relevant conduct in the Complaint predates this amendment.

the protected characteristics together.  Even if I, likewise, consider all of the conduct that plaintiff alleges created a hostile work environment together—based on each protected characteristic and including facially neutral acts—it falls short of stating a hostile work environment claim.

Plaintiff alleges that the following conduct created a hostile work environment based on his gender or sexual orientation, religion or national origin, and disability: four instances in which Nagpurkar called plaintiff "gay" for wearing an earring in one ear and "continued to discuss" the topic with plaintiff; Nagpurkar's comment that plaintiff "was to blame for his disability because he failed to pray and failed to do Yoga, as expected of good Hindus;" Nagpurkar's "routine" comments demeaning to plaintiff's disability over no more than a three-week period; Nagpurkar's comment to plaintiff "Don't let this happen again" when plaintiff requested to leave work early to visit his doctor; Nagpurkar's disclosure of plaintiff's "confidential medical condition" to other IT staff; Nagpurkar's "constant" criticism of plaintiff for standing up from his desk to alleviate his back pain; Nagpurkar's sabotage of plaintiff's work, including keeping him in the dark about projects, timelines and deliverables and not permitting him to email colleagues; and Nagpurkar's micromanagement of plaintiff's work.  Complaint ¶¶ 19-21, 26-29, 42-45.

Many of these allegations—including excessive criticism of plaintiff for standing up from his desk to alleviate his back pain, workplace sabotage through the exclusion of plaintiff from projects, timelines and deliverables and not permitting plaintiff to email colleagues, and micromanagement of plaintiff's work—are of the type that have been regularly held by courts in this Circuit to not be objectively "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *See, e.g.*, *Littlejohn*, 795 F.3d at 321 (dismissing hostile work environment claim based on allegations of a similar type and collecting cases).

21

Plaintiff's allegation that Nagpurkar disclosed plaintiff's "confidential medical condition to IT staff" also is not sufficient to state such a claim.  Complaint ¶ 27.  Plaintiff does not allege what medical condition Nagpurkar disclosed, but the only plausible inference from this allegation is Nagpurkar disclosed that plaintiff was experiencing extreme back pain and left work early to visit his doctor for it.  *Id.* ¶¶ 24, 27.  To be sure, "[t]he disclosure of an individual's sensitive medical information might, under certain circumstances, constitute discrimination so severe as to work a transformation of the plaintiff's workplace."  *See DeLuca v. Sirius XM Radio, Inc.*, 2017 WL 3671038, at *19 (S.D.N.Y. Aug. 7, 2017) (internal quotation marks and citations omitted).  But Nagpurkar's disclosure that plaintiff was experiencing extreme back pain was not objectively severe or humiliating.  Moreover, the disclosure was not physically threatening.  Plaintiff also does not allege that it interfered with his work performance; and, while the absence of this allegation is not dispositive, it is another factor to consider in assessing all the circumstances.  *See Daniel*, 689 F. App'x at 4.[10]

That leaves Nagpurkar's four comments directed to plaintiff's gender or perceived sexual orientation, her single comment directed to plaintiff's religion or national origin, and her single comment made in response to plaintiff's request to leave work early to visit his doctor.  These were not pervasive.  *See Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 781

---

[10] In plaintiff's opposition, plaintiff argues that he has also sufficiently alleged a hostile work environment claim based, in part, on the dissemination of his personal health information on "several occasions," though plaintiff does not specify which allegations he is referencing.  Opp. 25.  Other than the disclosure of plaintiff's "confidential medical condition to IT staff," Complaint ¶ 27, discussed in the text, the only other disclosure of plaintiff's information that is alleged in the Complaint is Nagpurkar's disclosure of "highly confidential information obtained from his background check to several IT staff members."  *Id.* ¶ 17.  Plaintiff does not, even in a conclusory manner, allege that this disclosure created a hostile work environment.  And even if I considered this allegation, it is far too vague to support plaintiff's hostile work environment claims.

(S.D.N.Y. 2019).  Nor were any objectively severe or physically threatening, and plaintiff does not allege that any interfered with his work performance.  *See id.* at 781-82.

The above analysis also applies to Nagpurkar's comments directed to plaintiff's disability, except that these comments occurred with more regularity.  Upon plaintiff's physical return to the office, plaintiff alleges that Nagpurkar made "routine" comments demeaning plaintiff's disability over a three-week period, such as "Are we going to need to get you a wheelchair?" and "You are like an old man."  I, therefore, must determine whether the greater frequency of these comments nudges plaintiff's hostile work environment claims across the line.  I find that it does not.  These comments, even if "routine," occurred over a period of, at most, three weeks.  This conduct "simply put, is not sufficiently 'continuous and concerted in order to be deemed pervasive.'"  *Farmer*, 473 F. Supp. 3d at 336-37 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Considering all of plaintiff's hostile work environment allegations together, they simply do not objectively rise to the level of conduct "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris*, 510 U.S. at 21).

## 2.  NYCHRL Hostile Work Environment Claims

Unlike federal and state law, a plaintiff need not plead severe or pervasive conduct under the NYCHRL.  *See Mihalik*, 715 F.3d at 110.  "To prevail on liability, the plaintiff need only show differential treatment—that [he] is treated 'less well'—because of a discriminatory intent."  *Id.* (internal citation omitted).  "Thus, whereas hostile work environment allegations are evaluated as separate claims herein under Title VII and the NYSHRL, such allegations do not present separate and distinct claims under the NYCHRL."  *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 837

n.8 (S.D.N.Y. 2013).  Because I have already found that plaintiff meets the City standard, I do not need to separately determine whether plaintiff states NYCHRL hostile work environment claims.

### D.  Failure-to-Accommodate Claims

Plaintiff brings claims for failure to accommodate under the ADA, NYSHRL, and NYCHRL.  To state a claim under each statute, a plaintiff need only allege facts to support his prima facie case that: (1) he is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.  *Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 32 (2d Cir. 2019); *Peterson v. N.Y.C. Dep't of Educ.*, 2020 WL 2559835, at *5 (E.D.N.Y. May 20, 2020) (ADA, NYSHRL, and NYCHRL).

Defendants do not contest the first three prongs.  They argue only that they did not refuse to provide any reasonable accommodations because both requests for accommodations were granted.  Defs.' Brief 9.  I will address each of plaintiff's requests for accommodations in turn.

#### 1.  Request for lumbar support

After experiencing back pain, plaintiff requested lumbar support for his chair from the NYCDOC's EEO office.  Complaint ¶ 22.  He alleges that "NYCDOC refused to provide the requested lumbar support until Plaintiff supplied MRI and X-Ray images of his back.  As such, NYCDOC failed to provide Plaintiff with the requested lumbar support."  *Id*. ¶ 23.  Defendants infer from this allegation that plaintiff's request for lumbar support was granted.  While that is a plausible inference, there is also another plausible inference, namely, that the lumbar support was never provided.  Plaintiff expressly alleges that defendants "failed to provide Plaintiff with the requested lumbar support."  *Id*.  Drawing all reasonable inferences in plaintiff's favor, as I must on a motion to dismiss, I accept that plaintiff has adequately alleged that he was denied lumbar

support for his back.  Accordingly, defendants' motion to dismiss plaintiff's accommodation claims based on this request is denied.  Discovery will answer the question of whether plaintiff was denied lumbar support for his chair.

### 2.   Request to work from home following hospitalization

Plaintiff also alleges that, following his hospitalization for the slipped disc in his back, he requested permission to work from home until his back healed.  *Id*. ¶ 35.  He pleads that this request was denied when he was granted only two weeks work from home.  *Id*. ¶ 38.  Defendants argue that plaintiff was not denied a reasonable accommodation because the two weeks of work from home was a reasonable accommodation.  But "whether an accommodation request is reasonable is more appropriately determined on summary judgment or by the factfinder at trial."  *E.g.*, *Bertuzzi v. Copiague Union Free Sch. Dist.*, 2020 WL 5899949, at *9 (E.D.N.Y. Mar. 9, 2020) (internal citation omitted), *report and recommendation adopted as modified*, 2020 WL 3989493 (E.D.N.Y. July 15, 2020); *Limauro*, 2021 WL 466952, at *7-8.  Accordingly, the reasonableness of the accommodation that defendants provided to plaintiff will be more appropriately resolved at a later stage of this litigation.

Defendants also urge dismissal of these claims on the ground that, after plaintiff's request was denied and defendants provided only two weeks of work from home, it was incumbent on plaintiff to make a follow-up request if he believed the accommodation provided was inadequate.  Defs.' Brief 9-10.  But, in order to state a failure-to-accommodate claim, a plaintiff need not allege that he made further efforts to seek a reasonable accommodation after being denied his initial

request.[11]  *See Limauro*, 2021 WL 466952, at *7-8.  Accordingly, defendants' motion to dismiss plaintiff's accommodation claims based on this request is also denied.

### E.  FMLA Claims

The FMLA entitles an eligible employee to take up to twelve weeks of leave during any 12-month period because of, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1).  Section 2615(a)(1) makes it unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).  This section gives rise to at least two varieties of FMLA claims: interference and retaliation.  *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166-68 (2d Cir. 2017).  Plaintiff brings both types of claims here.

To state an FMLA interference claim, plaintiff must plausibly allege that he was an (1) eligible employee under the FMLA; (2) defendants are an employer covered by the FMLA; (3) he was entitled under the FMLA to take leave; (4) he gave notice to defendants of his intention to take leave; and (5) he was denied benefits to which he was entitled under the FMLA.  *Patel*, 2021 WL 4852426, at *3.  To state an FMLA retaliation claim, plaintiff must plausibly allege that (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  *Id*.  The first element of an FMLA

---

[11] Defendants also argue that it was plaintiff who was responsible for a breakdown in the interactive process, and, therefore, his claims should fail.  Defs.' Brief 9-10.  Even assuming that, in the appropriate case, a failure-to-accommodate claim should be dismissed where it is apparent from the face of the complaint that it was the plaintiff who was responsible for a breakdown in the interactive process, defendants ignore the allegation, which I must accept as true, that defendants never "engage[d] in an interactive dialogue with Plaintiff" before denying his accommodation request.  Complaint ¶ 38.  Accordingly, this argument is without merit.

retaliation claim necessarily includes the third and fourth elements of an FMLA interference claim. That is, in order to plausibly allege that plaintiff exercised rights protected under the FMLA, plaintiff must allege that he was entitled under the FMLA to take leave and that he gave sufficient notice to defendants of his intention to take FMLA leave. *See, e.g.*, *Horsting v. St. John's Riverside Hosp.*, 2018 WL 1918617, at *6 (S.D.N.Y. Apr. 18, 2018) (collecting cases); *Milne v. Navigant Consulting*, 2010 WL 4456853, at *10 & n.19 (S.D.N.Y. Oct. 27, 2010) (same).

Plaintiff alleges that he requested FMLA leave on three occasions: when he "requested FMLA leave and that Defendant allow him to work from home, meaning from the hospital" while hospitalized for the slipped disc in his back; when he asked to work from home after his hospitalization; and when he asked to leave work early to see his doctor after experiencing back pain. Complaint ¶¶ 24, 32, 35. Because, for all three requests, plaintiff does not plausibly allege that he was entitled, or that he adequately notified defendants that he intended, to take FMLA leave, plaintiff's FMLA interference and retaliation claims based on these requests fail.

### 1. Entitlement to FMLA leave

In order to plead that plaintiff was entitled to take FMLA leave, plaintiff must allege that he sought FMLA leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1); 29 C.F.R. § 825.112; *Robles v. Medisys Health Network, Inc.*, 2020 WL 3403191, at *14 (E.D.N.Y. June 19, 2020). The Department of Labor ("DOL") has promulgated regulations defining when an employee is "unable to perform the functions of the position." 29 C.F.R. § 825.123; *see also Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 379 (2d Cir. 2017) (referring to DOL regulations in determining plaintiff's entitlement to FMLA leave). Section 825.123 contains two circumstances sufficient to consider an employee "unable to perform the functions of the position."

First, "[a]n employee is unable to perform the functions of the position where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position."  29 C.F.R. § 825.123.[12]  Second, "[a]n employee who must be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment."  *Id*.  "Importantly, § 825.123 uses the word 'must' to imply that the employee's absence is necessary for that employee's treatment.  Alternatively, an absence for unnecessary treatment or no treatment at all means that the employee is not sufficiently incapacitated so as to render her unable to perform her duties."  *Attakora v. D.C.*, 943 F. Supp. 2d 152, 158 (D.D.C. 2013) (quoting *Jones v. C & D Techs., Inc.*, 684 F.3d 673, 677 (7th Cir.2012)).

Plaintiff simply has not alleged that he was unable to perform an essential function of his position or that he must have been absent from work to receive medical treatment for any of the three alleged FMLA leave requests.  With respect to plaintiff's requests to work from the hospital and home following his hospitalization, plaintiff does not allege that he was unable to perform an essential function of his position or that he was "*absent* from work to receive medical treatment."  To the contrary, plaintiff alleges that he requested to, and did, continue working both from the hospital and from home.  Complaint ¶¶ 32-33, 35, 40.  With respect to his request to leave work early to visit his doctor, plaintiff's allegation that he was experiencing "extreme pain in his back" falls short of allowing me to plausibly infer that he was unable to perform an essential function of his job.  *Id*. ¶ 24.  Indeed, plaintiff alleges that he was even able to continue working while

---

[12] While this section speaks in terms of requiring a finding by a health care provider, some courts have not required such a finding where the plaintiff otherwise establishes an inability to perform an essential function of the position.  *See, e.g.*, *Pagel v. TIN Inc.*, 695 F.3d 622, 628 (7th Cir. 2012).  The issue of whether such a finding is required is not before me in this case, so I do not address it.

hospitalized for a slipped disc in his back. *Id.* ¶¶ 32-33. Moreover, plaintiff fails to allege that he ever received treatment after he left work early to visit his doctor, what treatment he received, or why that treatment was necessary to treat his back pain. I, therefore, cannot plausibly find that plaintiff received "necessary" treatment when he requested permission to leave work early to visit his doctor. *See Attakora*, 943 F. Supp. 2d at 158. Plaintiff, thus, fails to allege that he was entitled to FMLA leave for any of the three of his alleged requests.

### 2. Notice of intention to take FMLA leave

Plaintiff's FMLA interference and retaliation claims also fail for the independent reason that plaintiff does not allege that he provided sufficient notice to defendants of his intention to take FMLA leave. "When the approximate timing of the need for leave is not foreseeable," the DOL regulations require only that an employee "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(a)-(b). In other words, the notice is sufficient if it "indicates reasonably that the FMLA may apply." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 111 (2d Cir. 2017). But an "employer is not required to be clairvoyant." *Miller v. Venator Grp., Inc.*, 2000 WL 648186, at *3 (S.D.N.Y. May 18, 2000).

With respect to plaintiff's requests to work from the hospital and home following his hospitalization, plaintiff alleges that he communicated to the defendants that he sought accommodations in order to continue working and did continue working. Complaint ¶¶ 32-33, 35, 40. But plaintiff must plausibly allege that he communicated to his employer that he was seeking "leave, not just an accommodation." *See Macropoulos v. Metro. Life Ins. Co.*, 2018 WL 1508564, at *13 (S.D.N.Y. Mar. 26, 2018); *Barletta v. Life Quality Motor Sales Inc.*, 2016 WL 4742276, at *6 (E.D.N.Y. Sept. 12, 2016); 29 C.F.R. § 825.303(b) (requiring that an employee "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to

the *leave request*") (emphasis added).   These allegations render it implausible that plaintiff reasonably apprised defendants of his intention to take time off from work.  With respect to his request to leave work early to visit his doctor, plaintiff merely alleges: "[e]xperiencing extreme pain in his back, Plaintiff asked Defendant Nagpurkar for permission to leave work early to see his doctor."  Complaint ¶ 24.  Plaintiff does not allege the content of his conversation with Nagpurkar.  But even drawing an inference that plaintiff informed Nagpurkar that he was experiencing "extreme pain in his back," and needed to leave work early to visit his doctor for it, this alone is not sufficient information for the defendants to reasonably determine plaintiff's absence may be for a "serious health condition" within the meaning of the FMLA.  *See Miller*, 2000 WL 648186, at *3; *see also Basso v. Potter*, 596 F. Supp. 2d 324, 338-41, 343-44 (D. Conn. 2009).  Plaintiff alleges that he returned to work the next day.  Complaint ¶ 27.

## V.    Conclusion

For the reasons set forth above, defendants' motion to dismiss is granted, in part, and denied, in part.  Defendants' motion to dismiss is granted as to the following claims: federal and state hostile work environment claims; retaliation claims only to the extent they are based on plaintiff's complaint to the DOI; and FMLA claims.  Defendants' motion to dismiss is otherwise denied.

**SO ORDERED.**

_____/S/_____

**NINA GERSHON**
**United States District Judge**

January 31, 2022
Brooklyn, New York

30